0IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LOIDA SANCHEZ-FIGUEROA　　　*
　　　　　　　　　　　　　　　　*
　　　Plaintiff　　　　　　　　*
　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　*　　　Civil No. 04-2327(SEC)
　　　　　　　　　　　　　　　　*
SEGUROS DE VIDA TRIPLE S, INC.　*
　　　　　　　　　　　　　　　　*
　　　Defendant　　　　　　　　*
**********************************

**OPINION AND ORDER**

Pending before the Court are several motions, each duly opposed by the other party: Defendants' Motion Requesting Protective Order (Docket #21, opposition at Docket #32, reply at Docket #38), Defendant's Motion for Summary Judgment (Docket # 26, opposition at Docket # 35, reply at Docket # 38), Plaintiff's Motion Requesting Order (Docket #39, opposition at Docket # 40), Plaintiff's Urgent Motion Requesting Order (Docket # 43, opposition at Docket # 45), and Plaintiff's Motion Submitting Evidence and for Summary Judgment (Dockets ## 42, 46, opposition at Docket #44).  The first part of this opinion will deal with the discovery issues, that is, Defendant's Motion for Protective Order (Docket #21) and Plaintiff's two motions Requesting Order (Dockets ##39, 43).  We turn to the parties' requests for summary judgment on the second part of the opinion.

Before turning to the requests before us, however, for purposes of clarity we set forth a very brief background.  Plaintiff was employed by Banco Popular de Puerto Rico, Inc. ("Banco Popular") until 2003, when she was terminated.  Banco Popular had a benefits plan which allowed Plaintiff to request long term disability benefits.  The Claims Administrator for such plan is Defendant.  Plaintiff requested long term disability benefits from Defendant and these were denied.  On appeal, Defendant upheld its prior decision to deny the benefits. Plaintiff then turned to the Court claiming Defendant had improperly denied her long term disability benefits.  See, 29 U.S.C. §1132(a)(1)(B).

As the case progressed, an issue as to what discovery, if any, would be exchanged by the parties, emerged.  However, it was not presented to the Court for resolution until, shortly

before the deadline for summary judgment via Defendant's protective order. Then, before Plaintiff had filed her opposition to the motion for protective order, Defendant filed its motion for summary judgment. Plaintiff later opposed both motions. Some time after, Plaintiff filed a Motion Requesting Order seeking, in essence, a Court order to compel the same discovery which Defendant sought to preclude via its motion for protective order.

### I. The Evidentiary Issues

Defendant requested a protective order to impede Plaintiff from taking depositions of those persons involved in the decision-making process that ultimately concluded with the denial of Plaintiff's claims. Plaintiff opposed Defendant's motion by arguing that by virtue of the Employment Retirement Income Security Act (hereinafter "ERISA"), Defendant was a state actor and had to comply with the constitutional requirements of the Due Process clause, and that Defendant had not afforded Plaintiff Due Process in reaching its determination to deny Plaintiff long term disability benefits. Later, after the deadlines for discovery and summary judgment had elapsed, and after Plaintiff filed her opposition to Defendant's Motion for Summary Judgment, Plaintiff filed her motion requesting from the Court an order to depose Dr. Lori Cohen and Gloribel Torres; both were involved with Plaintiff's long term disability claim before Defendant. Later still, Plaintiff filed another motion, requesting an order from the Court for Defendant to produce the insurance policy issued by it to Banco Popular, and the rules and regulations used by Defendant in evaluating and deciding claims for benefits.

We deal with the final motion (Docket #43) first. It was filed several months after the deadline for discovery had elapsed. Furthermore, per Defendant's opposition, which Plaintiff's did not seek leave to reply to, before the time for conducting discovery had concluded, Plaintiff did not serve upon Defendant a request for such documents. As such, Plaintiff's motion (Docket #43) is **DENIED**.

While Plaintiff's motion for a Court order to take the depositions of Dr. Cohen and

**Civil No. 04-2327**                                                                                          3

Gloribel Torres suffers from similar flaws, since it deals with the same issue as Defendant's request for protective order, we will address them together. Plaintiff's opposition to Defendant's motion for protective order, like its own motion requesting order, is grounded on its argument that Defendant infringed the Due Process clause. There appears to be no controversy, however, surrounding the facts on which Plaintiff bases her argument, that is, that Defendant did not provide her with an oral hearing where Plaintiff could confront and cross-examine the witnesses or present evidence in her favor and that Defendant conducted *ex parte* interviews with her doctors without notifying her such course of action. Thus, Plaintiff's contention rests on purely legal issues, i.e., whether the requirements of the Due Process clause apply to Defendant and whether the process that it did give Plaintiff complied with the constitutional strictures, and not on uncertain factual bases requiring discovery. Those issues should be and will be addressed in the context of summary judgment. As such, both Plaintiff's and Defendant's motions will be deemed **MOOT**.

### II. Summary Judgment

Both parties have requested summary judgment. After reviewing the filings and the applicable law, for the reasons set forth below, Plaintiff's request will be **DENIED** and Defendant's motion will be **GRANTED**.

### Standard of Review

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant,"

and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting from Garside, 895 F.2d at 48 (1st Cir. 1990). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id. (citations omitted).

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." The non-movant has a corresponding obligation to file with its opposition a statement admitting, denying, or qualifying the facts "by reference to each numbered paragraph of the moving party's statement of material facts", supporting each denial or qualification of the movant's material facts with a citation to the record. Local Rule 56(c). If the non-movant fails to properly controvert the movant's statement, all the material facts set forth therein "shall be deemed to be admitted." Local Rule 56(e); Cosme-Rosado v. Rosado-Figueroa, 360 F.3d 42 (1st Cir. 2004). This is the so-called "anti-ferret rule." See, e.g., Orbi, S.A. v. Calvesbert &

**Civil No. 04-2327(SEC)**                                                                                       5

Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1998).  While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal."  Tavárez v. Champion Prods., Inc., 903 F. Supp. 268, 270 (D.P.R. 1995).

As required by Local Rule 56(b), Defendant filed a statement of undisputed facts in support of its motion for summary judgment.  See, Docket #27-1.  Plaintiff filed her own statement of contested facts, in which she fails to make reference to Defendant's numbered facts.  See, Docket # 35-2, ¶¶ 7-25.  Because Plaintiff failed to file an opposing statement of facts in which, by reference to the numbered paragraphs in Defendant's statement of undisputed facts, she admitted, denied, or qualified Defendant's facts, she has clearly run afoul of Local Rule 56(c).  Consequently, all facts in Defendant's statement that are properly supported by record citations will be deemed admitted.  See, Local Rule 56(e).  Plaintiff's failure to comply with Local Rule 56(c) notwithstanding, the Court will take into account the facts contained in her own "Statement of Uncontested Facts", Docket #35-2, ¶¶ 1-4.[1]

Plaintiff's procedural mishaps also doom her own Motion for Summary Judgment (Docket # 42-1).  In a four-page motion submitting the Social Security Administration's (hereinafter "SSA") decision in favor of Plaintiff,[2] Plaintiff requested that she be granted long term disability benefits in accordance to the claim made to Defendant.  The request came after the applicable deadline for submitting motions for summary judgment, is not accompanied by any developed argumentation with supporting legal citations, and is also lacking the required Local Rule 56(b) statement of facts.  Given Plaintiff's utter non-compliance with the applicable rules governing motions for summary judgment, Plaintiff's

---

[1] Plaintiff's Statement of Uncontested Facts contains six numbered "facts". However, as Defendant correctly points out, ¶¶5-6 of that statement are not actually facts, but rather legal conclusions. We will deal with these and Plaintiff's remaining legal arguments in our analysis of the applicable law.

[2] The SSA's decision was effectively attached to Docket # 46.

**Civil No. 04-2327(SEC)** 6

motion for summary judgment is **DENIED**.

### Procedural and Factual Background

The following facts are taken from Defendant's admitted statement and are properly supported by the record:

1. Plaintiff worked for Banco Popular de Puerto Rico, Inc. ("Banco Popular") as a Telephone Banking Representative until April 17, 2003, when she was terminated.

2. As an employee of Banco Popular, Plaintiff was entitled to long term disability benefits, pursuant to the terms of the benefits plan established by Banco Popular for its employees.

3. Defendant is the claims administrator under Banco Popular's long term disability benefits plan. Defendant manages and administers Banco Popular's employees' claims with the assistance of Integrated Disability Resources, Inc. ("IDR"). IDR was hired by Defendant to perform underwriting and claims administration and management services, including making long term disability benefit determinations and dealing with ERISA appeals.

4. Defendant has complete discretion, right and authority to interpret the terms of Banco Popular's long term disability benefits plan and make final determinations regarding coverage and benefits.

5. The claims procedures established by the plan are the following: (1) beneficiaries present their claims for benefits; (2) Defendant will have complete discretion and authority to make benefit determinations, including the right to request additional information and an evaluation of the claimant; (3) claimants shall have an opportunity to appeal, in writing, Defendant's decision within 180 days; and (4) Defendant shall render a final decision within 45 days, unless an extension of time is requested.

6. Disability under the terms of the plan has been classified as "24 month/partial". To be disabled under the "24 month/partial" classification means that the insured cannot perform each of the material duties of his [or her] regular occupation for the first 24 months of

**Civil No. 04-2327(SEC)**                                                                                                7

disability.

7. The elimination period of the policy is a period of consecutive days of disability, beginning on the first day of the alleged disability, for which no benefit is payable. In Plaintiff's case, the elimination period was 180 days. Ergo, Plaintiff had to demonstrate continued disability from March 23, 2003, allegedly the date in which the disability began, until September 19, 2003, before being eligible to receive any long-term disability benefits.

8. Defendant received Plaintiff's claim for long term disability benefits on July 18, 2003.

9. In her application for long-term disability benefits, Plaintiff listed Dr. Pedro Zayas and Dr. Elí Rojas as her treating physicians. Both of these doctors provided Defendant with an Attending Physician Statement and a four-question questionnaire.

10. Dr. Zayas diagnosed Plaintiff with anxiety, depression, and a "mixed situational disorder". Dr. Zayas stated that Plaintiff could sit continuously for eight hours per day, walk for two hours per day, and alternate among these for eight hours per day continuously. Dr. Rojas, on the other hand, did not provide a diagnosis in the Attending Physician Statement. In his answers to the questionnaire, Dr. Rojas stated that Plaintiff's travel was limited by her obesity.

11. On July 24, 2003, Defendant asked Plaintiff for additional medical evidence in support of her claim, as well as information regarding any claims made to the State Insurance Fund (hereinafter SIF) or the SSA. Defendant advised Plaintiff that in order to evaluate her claim, Defendant might choose to conduct an independent medical evaluation of Plaintiff. Plaintiff was also informed that, in order to qualify for benefits under her plan, she needed to demonstrate continuous disability for a period of one hundred and eighty (180) consecutive days.

12. On August 6, 2003, Plaintiff replied to Defendant's request by stating that because her case at the SIF was still active, she was unable to provide her medical record at the SIF

**Civil No. 04-2327(SEC)**                                                                                                    8

or any information about claims made to either the SIF or the SSA. Plaintiff added that all relevant medical records had been submitted to Defendant with her original application.

13. Plaintiff's listed treating physicians, Dr. Rojas and Dr. Zayas were contacted in writing on two different occasions[3] regarding Plaintiff's medical records.

14. Plaintiff was interviewed by Defendant via phone on September 4, 2003. Plaintiff revealed that she had suffered from tension, depression, and severe anxiety since 1997. From that time on, she received treatment from Dr. Nilda García, a psychiatrist, except for the year she was treated by the SIF. Plaintiff also informed Defendant that she was offered two positions by Banco Popular but she turned them down.

15. On October 30, 2003, Plaintiff was issued a formal denial letter, which stated, among other things, that her claim for long term disability benefits had been denied because she had failed to submit enough medical information for Defendant to determine that she was disabled throughout the elimination period and beyond.

16. The denial letter was sent to Plaintiff by Kate Barkman and stated: (1) the policy's definition of disability and elimination period, (2) the documents reviewed and on which Defendant's determination was based, (3) Defendant's determination and the bases of the same, and (4) Plaintiff's remedies under ERISA, including her right to an appeal, and the applicable deadlines.

17. On December 23, 2003, Plaintiff submitted to Defendant additional documents from her treating physicians. On January 2, 2004 and January 13, 2004, Plaintiff was advised of the need to file a written appeal explaining the reasons why she did not agree with Defendant's determination.

18. On February 11, 2004, Defendant received an appeal letter from Plaintiff's

---

[3] Defendants' statement of fact # 27 posits that the doctors were contacted on three occasions. However, an examination of the record citations included in support of that fact revealed only two letters to Dr. Rojas and Dr. Zayas (on August 6 and August 22, 2003) and three to the SIF (on August 6 and 22 and September 9, 2003).

**Civil No. 04-2327(SEC)**                                                                                               9

attorney, along with additional documents from Plaintiff's treating physicians. In the appeal letter, Plaintiff's attorney states that she is in disagreement with Defendant's decision to deny her long term disability benefits inasmuch as she suffers from a severe major depression that prevents her from working continuously for eight hours a day, five days a week. Besides providing information regarding the depression, Plaintiff's attorney states that Plaintiff also suffers from the following physical ailments: (a) a hearing impairment that has affected her hearing capacity in both ears, as well as her balance, (2) a recurring respiratory infections caused by Banco Popular's violations of OSHA's regulations, (3) obesity, caused by severe stress during her last years of work, and (4) carpal tunnel syndrome.

19. Plaintiff's medical record before Defendant is void of any medical evidence that would sustain Plaintiff's alleged claims of a physical disability through Plaintiff's elimination period and beyond.

20. On March 1, 2004, Defendant requested additional documents from Plaintiff's attorney in order to fully review Plaintiff's appeal. These documents included: (1) pharmacy records from January 2003 to the present, (2) readable notes from Dr. Nilda García's record of Plaintiff from 1997 to the present, (3) readable notes from the records of all other treating physicians, including Dr. Zayas and Dr. Rojas. The documents were not received.

21. In May 2004, Dr. Lori Cohen, a psychologist and independent consultant, was hired by IDR in order to perform an independent evaluation of the record, interview with Plaintiff's treating physicians and obtain a medical assessment addressing Plaintiff's level of mental functional capacity throughout the elimination period and beyond.

22. Dr. Cohen conducted peer interviews with both Dr. García and Dr. Rojas and reviewed Plaintiff's medical file. Dr. Cohen also prepared two reports based on the information she had gleaned from her examination of the medical report and the peer interviews. On her second and final report, Dr. Cohen concluded that "the data does not substantially support that [Plaintiff] was psychiatrically incapacitated from performing the

duties of her occupation for any employer during that period of time". See, Ex. 27-4, p. 10. Dr. Cohen added that because Plaintiff's last visit with Dr. García had been on June 2003, and she had stopped seeing Dr. Rojas on April 2003, she was unable to comment how Plaintiff had functioned from June 2003 onwards. Dr. Cohen noted that both Dr. García and Dr. Rojas opined that Plaintiff could have resumed work in either a different position with her prior employer or in the same position with a different employer.

23. On November 1, 2004, Defendant denied Plaintiff's appeal. Defendant informed Plaintiff that there was not enough evidence on the record to show that Plaintiff was incapable of performing each of the material duties of her occupation through her elimination period.

24. The letter denying Plaintiff's appeal states: (1) the documents reviewed in considering the appeal, including the additional information submitted by Plaintiff after the original denial of long term disability benefits, (2) the relevant policy and plan definitions, (3) Defendant's final decision regarding Plaintiff's benefits claim and the bases for the same, and (4) Plaintiff's remedies at law, including Plaintiff's right to file a civil action under ERISA.

**Applicable Law and Analysis**

As grounds supporting the entry of summary judgment, Defendant asserts the following: (1) in reviewing Defendant's determination, the Court should adhere to a deferential "arbitrary and capricious" standard of review, (2) Defendant used an appropriate procedure in denying Plaintiff's claim, and (3) Defendant's decision to deny disability benefits withstands the Court's scrutiny under the arbitrary and capricious standard of review. Plaintiff does not address Defendant's legal contentions, but rather opposes Defendant's motion by arguing that Defendant did not provide Plaintiff with constitutional Due Process and, therefore, its decision to deny disability benefits must be declared null. We will discuss Plaintiff's arguments along with Defendant's contention regarding the

appropriateness of the procedure utilized in denying Plaintiff her disability benefits.

### ERISA

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits'. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983) and Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)). The statute "provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans". Id. at 108 (quoting Mass Mutual Life Ins. Co., 473 U.S. at 146). Among other things, ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan [or] to enforce his rights under the terms of the plan". 29 U.S.C. §1132(a)(1)(B). This action was brought pursuant to that section of the statute.

### Standard of Review

"ERISA does not set out the appropriate standard of review for actions under §1132(a)(1)(B) challenging benefit eligibility determinations". Id. at 109. In Firestone, *supra*, at 957, the U.S. Supreme Court held that "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan", courts should apply a *de novo* standard to reviews under 29 U.S.C. §1132(a)(1)(B). Under a *de novo* standard of review, the court conducts a full review of the administrative record and independently weighs the facts and opinions in that record, without granting any deference to the administrator's opinions or conclusions based on the facts. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005). The object of such review is "to determine whether the claimant has met his burden of showing he is disabled within the meaning of the policy". Id.

When, however, a plan grants the administrator discretionary authority, a deferential arbitrary and capricious judicial standard of review applies. Brigham v. Sun Life of Canada,

**Civil No. 04-2327(SEC)** 12

317 F.3d 72, 81(1st Cir. 2003) (citing Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). Under this standard, "the administrator's decision will be upheld if it is reasoned and 'supported by substantial evidence in the record'". Vlass v. Raytheon Employees Disability Trust, 244 F.3d 277, 30 (1st Cir. 2001) (quoting Doyle v. Paul Revere life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)). "Substantial evidence, in turn, means evidence reasonably sufficient to support a conclusion". Doyle, 144 F.3d at 184. Sufficiency "does not disappear merely by reason of contradictory evidence". Id. (string citation omitted). "The operative inquiry under arbitrary, capricious, or abuse of discretion review is 'whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Wright v. R.R. Donnelley & Sons Co., 402 F.3d 67, 74 (1st Cir. 2005) (quoting Twomey v. Delta Airlines Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003)).

Defendant posits that under the terms of the plan, it was granted complete discretion, right, and authority to interpret the terms of the plan and make final determinations regarding coverage and benefits. See, Docket # 27-1. It cites the following section of Banco Popular's disability benefits plan as supporting that conclusion:

> The insurance company shall have the exclusive right and power to interpret the insurance policies underwritten for the plan and shall be the only entity responsible for determining whether an employee is disabled to receive short term disability benefits or long term disability, to compute the amount of the benefits, and to pay for them.
>
> Any determination made by the Plan Administrator or by the Claims Administrator (insurer) related to the eligibility, participation, interpretation of the Plan or its policy, benefits determination, computation of amount benefits and the interpretation of the Plan and its policy shall be final and mandatory for all parties. The benefits under this plan shall be paid if and only if the Claims Administrator (insurer) decides that the participant has a right to receive them.

Docket # 36, p. 24.

Plaintiff does not contest that Defendant has discretion to interpret the terms of the plan and make benefits determination. Nor would an argument to that effect prosper.

Language such as that used in Banco Popular's plan has been held to confer discretionary authority on the administrator. See, Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 11-12 (1st Cir. 2003) (claims administrator had discretion warranting arbitrary and capricious standard of review; claims administrator had authority to interpret the plan to determine eligibility of benefits and such determinations were final, conclusive, and binding on all parties affected thereby); Vlass, 244 F.3d at 30 n.3 (grant of discretion to claims administrator found in plan that gave Plan Administrator and Claims Administrator, with respect to claims administration, the exclusive right, in their sole discretion, to interpret the Plan and decide all matters arising thereunder, and added that all determinations of the Plan Administrator and Claims Administrator as to the matters within their assigned responsibilities would be conclusive and binding). See also, Brigham, 317 F.3d at 81 (finding grant of discretion where the plan stated that the insurer could require proof in connection with the terms and benefits of the policy and that such proof had to be satisfactory to the insurer).

     Because per the terms of Banco Popular's plan Defendant was granted discretion to interpret the terms of the plan and make eligibility determinations, we review the denial of Plaintiff's long term disability benefits under the familiar arbitrary and capricious standard.

     <u>Procedural Requirements</u>

     Defendant affirms that it complied with the minimum procedural requirements set forth in ERISA, 29 U.S.C. §1133, and that Banco Popular's plan does not add any other procedural requirement. Plaintiff counters by asserting that constitutional Due Process is required when an administrator makes a determination regarding benefits, and that no such process was afforded to Plaintiff because: (1) Defendant did not hold a hearing allowing Plaintiff to confront and cross-examine the evidence adverse to her; (2) Plaintiff's claim was not adjudicated by an impartial and competent adjudicator; (3) Defendant used a medical "expert" who is not qualified and did not notify Plaintiff that the expert would be used or the qualifications of the expert. Other than arguing that Plaintiff was entitled to, but did not

**Civil No. 04-2327(SEC)** 14

receive, Due Process, however, Plaintiff offers no other argument to rebut Defendant's contentions on the more modest, but more obviously applicable, procedural requirements of 29 U.S.C. §1133.

ERISA requires that employee benefit plans: "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §1133. Additionally, the Department of Labor has promulgated regulations concerning the information to be given to a claimant upon denial of her claim and the appeals process. To that end, 29 C.F.R. § 2560.503-1(g) requires that the initial notice of a claim denial contain: (1) the specific reason(s) for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the participant wishes to submit her claim for review. In turn, 29 C.F.R. §2560.503-1(h)requires plans to provide an internal appeals process "by which a claimant or her authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary, and under which a full and fair review of the claim and its denial may be obtained". In this appeals process, the claimant or her representative must be afforded a right to: "(i)request a review upon written application to the plan; (ii) review pertinent documents, and (iii) submit issues and comments in writing".

A review of Defendant's statement of uncontested facts (Docket #27-1), as well as the documents in support thereof, reveal that, in denying Plaintiff's claim, Defendant complied with the statutory and regulatory exigencies. Defendant sent Plaintiff a denial letter detailing

the documents it had review, citing the specific provisions of the plan that were at issue, explaining the reasons for the denial, including that Defendant was lacking information about Plaintiff's functional abilities throughout the elimination period, and advising Plaintiff of her right to appeal the decision. Upon receiving Plaintiff's appeal with further information, Defendant reviewed the same, hired Dr. Cohen to perform an independent evaluation of the record and perform peer interviews with Plaintiff's doctors. Dr. Cohen informed Defendant that the information she had, both from the medical record and what she had gleaned from the peer interviews, did not support a finding of disability throughout the elimination period. Defendant then sent Plaintiff's attorney a letter denying her appeal. Therein, Defendant informed the documents and information that had been reviewed, the specific plan provisions that were at issue, and Plaintiff's remedies under ERISA.

Plaintiff does not dispute that Defendant complied with the relevant statutory and regulatory requirements. Rather, she chooses to frame her argument as one of denial of Due Process. The fatal flaw of that argument is that Plaintiff is not entitled to constitutional Due Process in the review of her claim by Defendant. ERISA "does not establish eligibility requirements for disability benefits or administer the private pension plans it covers [.][but rather] merely establishes minimum standards for fiduciaries of retirement plans to improve the soundness of such plans." Brown v. Ret. Comm. of the Briggs & Stratton Ret. Plan, 797 F.2d 521, 527-528 (7th Cir. 1986) (citations omitted). As such, no state action is involved when a private entity, not the state or the arm of the state, like Defendant, denies a claim for benefits. See, Id. Because no state action is involved, Plaintiff cannot require that Defendant comply with constitutional Due Process. See, Id., Wade v. Life Insurance Co. of North America, 245 F.Supp. 2d 182, 190-191 (D.Me 2003) (rejecting due process argument because no state action was involved in denial of long term disability benefits).

Denial of benefits

Finally, Defendant argues that its denial of benefits was not arbitrary nor capricious.

**Civil No. 04-2327(SEC)**                                                                                                                             16

To that end, Defendant points to the lack of evidence supporting Plaintiff's physical disability claims. As for her mental disability claims, Defendant posits that the evidence on the record supports its determination: an independent medical reviewer concluded that Plaintiff was not disabled throughout the elimination period, and both of Plaintiff's doctors asserted that she was able to work. Although Plaintiff, relying on her failed Due Process argument, would have us discount such evidence, she has offered no counter-argument that would allow the Court to conclude that Defendant was arbitrary and capricious.

We begin with the evidence of physical disability. Although there is some mention of physical conditions in the questionnaires filled out by Plaintiff's doctors –obesity, for example–, neither of them included physical conditions in their diagnosis of Plaintiff. Furthermore, although Plaintiff submitted evidence of her physical disabilities after her initial denial of the claim, that evidence referred to time periods other than the elimination period, thus rendering it useless for Defendant to determine whether Plaintiff's physical maladies translated into a disability throughout the elimination period and beyond.

As for Plaintiff's mental disability, although her evidence on that point was much stronger, there is no basis for concluding that Defendant was arbitrary or capricious. In the questionnaire he originally answered to evaluate Plaintiff's long term disability, Dr. Zayas stated that Plaintiff was able to sit for eight hours a day, walk for two hours a day, and alternate among these for eight hours a day. See, Docket 27-7, p. 27. Upon being asked by Dr. Cohen whether Plaintiff could have worked in a different position or for a different employer during the relevant time period, both Dr. Zayas and Dr. García opined that she could have. See, Docket 27-3, p.37-38 and Docket 27-4, p.9-11. The evidence on the record clearly supported Defendant's determination to deny Plaintiff her long term disability benefits.

Two arguments are still outstanding: (1) that Defendant operated under a conflict of interest because it was both the adjudicator and the payor of benefits, and (2) Plaintiff is

**Civil No. 04-2327(SEC)** 17

entitled to a decision in her favor because the SSA granted her disability benefits. Neither argument is persuasive. The SSA rendered its decision after Defendant had denied Plaintiff's claim originally and on appeal; thus, at the time Defendant made its determination, it did not count with evidence of the SSA's determination. Furthermore, in order for Plaintiff to be entitled to long term disability benefits under the Banco Popular plan, she had to satisfy the plan's requirements, not those set forth by the SSA. See, Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003). As for the conflict of interest, the First Circuit has stated that the fact that an administrator both determines benefits entitlement and pays out the benefits does not present such a serious conflict of interest. See, Doyle v. Paul Revere Life Insurance Co., 144 F.3d 181, 184 (1st Cir. 1998). In any event, when such a conflict is averred to exist, it does not automatically render the determination null. Instead, a court faced with such an argument must adhere to the arbitrary and capricious principle, "with special emphasis on reasonableness, but with the burden on the claimant to show that the decision was improperly motivated." Id.

Even taking a more stringent view of the record, however, Defendant's determination still withstands the scrutiny. Simply put, there is no evidence on the record to counter Defendant's contention that Plaintiff had not provided information that she was disabled throughout the elimination period and beyond. Without that information, Plaintiff did not meet the plan's long term disability definition and, therefore, was not entitled to benefits.

**Conclusion**

For the reasons stated above, Plaintiff's Motion Requesting Order (Docket # 43) is **DENIED**; Defendant's Motion for Protective Order (Docket #21) and Plaintiff's Motion Requesting Order (Docket # 39) are **MOOT**; Plaintiff's Motion Submitting Evidence (Dockets # 42, 46) is **NOTED**; Plaintiff's Motion for Summary Judgment (Docket # 42) is **DENIED**; and Defendant's Motion for Summary Judgment (Docket # 26) is **GRANTED**. Judgment will be entered accordingly.

**Civil No. 04-2327(SEC)** 18

═══════════════════════════════════════════════════════════════════════════

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September 2006.

s/ *Salvador E. Casellas*

SALVADOR E. CASELLAS

U.S. Senior District Judge

**Civil No. 04-2327(SEC)**                                                                 18

═══════════════════════════════════════════════════════════════════════════

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September 2006.

S/ *Salvador E. Casellas*

SALVADOR E. CASELLAS

U.S. Senior District Judge